## Isabella G. Page's Estate. Girard Life Insurance, Annuity and Trust Company's Appeal.

1. A testator residing in New Jersey, gave all his estate to trustees for the sole use and benefit of his children, the trustees to invest the proceeds "for the benefit of my said heirs," the income during minority to be applied to their education, &c., and the surplus to accumulate for their benefit. The portions of Isabella, who was unmarried, and other daughters married and unmarried, to be held in trust for their sole use and not to be in the power or subject to the debts of their husbands. In case of the death of any of his children without issue, their shares "to be merged in the general fund and divided as above directed among my said heirs." Isabella married after testator's death and died residing in Pennsylvania. The New Jersey court decreed her share to the ancillary administrator there (her husband), who was also administrator in Pennsylvania. *Held*, that the Orphans' Court in Pennsylvania had jurisdiction of her estate.

2. Her estate was distributable between her husband and children under the Married Woman's Act of April 11th 1848.

3. The fact that the bequest was for her separate use did not change the succession under the Act of 1848 and give it to her husband as survivor.

4. The Act of 1848 does not give the wife power—not conferred by the donor—over her estate settled to her separate use.

6. The suspension of such power in her, does not destroy her entire and undivided ownership of her personal property under the Act of 1848.

6. On her death her chattels and choses go into administration and not to her husband by survivorship.

7. The testator, in case it should be deemed advisable at any time by his trustees to sell any part of his real estate, authorized them to sell; the proceeds to be held upon the same trusts as thereinbefore expressed and set forth. He left personal estate which could meet the previous provisions of his will. *Held*, that under the whole will the direction to sell was not a conversion.

8. A conversion may arise without express words, when the testator clearly intends to create a fund out of both real and personal estate and bequeath it in money alone.

[Page's Estate.]

9. Isabella having died before actual conversion of the real estate took place, her equitable estate descended to her children as realty.

10. In distributing the testator's estate in New Jersey it was there decreed that Isabella's share should be paid to her husband as her " administrator— absolutely." *Held*, that this left the question of distribution of *her* estate to be settled by the forum of her domicil.

11. Ins. Co. *v.* Foster, 11 Casey 134; Wright *v.* Brown, 8 Wright 224, not applicable to this case.

January 8th 1874. Before AGNEW, C. J., SHARSWOOD and MERCUR, JJ.

Appeal from the Orphans' Court of *Philadelphia*: No. 18 to January Term 1872. In the distribution of the estate of Isabella Graham Page, deceased. The appeal was taken by the Girard Life Insurance, Annuity and Trust Company, guardian of the estates of Howard Wurts Page, Ethel Nelson Page, and William Byrd Page, minor children of the decedent, who left also to survive her her husband Samuel Davis Page, the appellee. At the time of her death the decedent's domicil was in Pennsylvania.

The decedent's estate was derived under the will of her father, William Wurts, of Trenton, New Jersey, who died December 25th 1858. The will was dated January 17th 1856.

By the first clause he gave to five trustees, whom he also made executors, " their heirs, executors, administrators and assigns, and the survivors and survivor of them, all my estate, real, personal and mixed," in trust "to and for the sole use, benefit and advantage of my beloved children" (naming them, amongst whom was Isabella Graham Wurts, afterwards Page, the decedent), " and grandchildren."

The will proceeded: * * * "And it is my will, and I do hereby order and direct, that my said trustees shall judiciously invest the proceeds of my estate, after settlement and my just debts paid, in some safe way, as their judgment may direct, as a joint or common fund, for the benefit of my said heirs, or they may, at the discretion of the said trustees, be separately invested for the benefit of each respectively, in their several proportions; the income from which said investments accruing to my children, during the minority of each, to be applied to their education and reasonable expenses, and any surplus after such expenses paid, to be so invested as to accumulate for their benefit.

"It is my will, and I do hereby direct, that the sum of three thousand dollars be paid to each of my sons, viz., John Howard Wurts, William Wilberforce Wurts, and George Washington Wurts, as they respectively attain the age of twenty-one years, and the balance or remainder of their respective portions I do order and direct to be paid to them as they respectively attain the age of twenty-two years.

" The portions of my daughters, Anna Wurts, Mary Cousinery, Elizabeth Grandin Wurts, Martha Haskins Wurts, and Isabella Graham Wurts, is to be held by the said trustees above named,

their heirs, executors, administrators and assigns, and the survivors or survivor of them, in trust for the sole use and benefit of my said daughters, and shall not be in the power of, or subject to the debts, control or management of their husbands: this restriction and condition is to apply to those of my daughters now married, and such of them as may hereafter become married, and the receipt of my said daughters, respectively, for their several and respective portions of annual income, or yearly profits, in their own name and their own hand, notwithstanding their present or future coverture, shall be sufficient discharge in law to the said trustees. * * *

"In case of the decease of any of my said children without issue, the share or shares of such so dying is to be merged in the general fund, and to be divided, as above directed, among my said heirs, and subject to the aforesaid conditions and restrictions. * * *

"I do further declare it to be my will, and my executors are hereby empowered and permitted, at their discretion, to loan, on interest, from time to time, to my son-in-law, Charles Wurts, in cash, any part or portion of the amount of my estate that may be coming or payable to my daughter, Mrs. Anna Wurts, after my decease, with her approbation and consent, the object being to preserve such sum as part of the trust fund created by my will for the benefit of my said daughter and her heirs. * * *

"*Fourthly.* In case it shall be deemed advisable at any time by said trustees and executors to sell and dispose of any part of my real estate, I do hereby authorize and empower them, and the survivors or survivor of them, to make such sale, at their discretion, either at public or private sale, and thereupon to make, execute and deliver a good and sufficient deed or deeds and conveyances in the law, to any purchaser or purchasers for any part of the real estate so by them sold. The proceeds of such sales to be received by the said trustees, and invested and held by them, upon the same trusts and to and for the same uses and purposes as are hereinbefore expressed and set forth."

The testator left a very large personal estate and also real estate both in New Jersey and Pennsylvania.

Isabella G. Wurts was married to Mr. Page in September 1861.

All the real estate of the testator in New Jersey and part of that in Pennsylvania had been sold before Mrs. Page's death. She became entitled also, not directly from the testator, to the sum of $9893.58.

The shares of the testator's daughters and granddaughters were held by the trustees in separate investments at Mrs. Page's death in 1867. Administration of her estate was granted by the register of wills of Philadelphia to her husband Mr. Page; ancillary administration also was granted to him by the Probate Court of New Jersey.

Proceedings in chancery in New Jersey between the executors

[Page's Estate.]

and trustees of the testator and Mr. Page and others were commenced February 12th 1868, to determine the rights of the respective parties under the will, &c. By his decree the chancellor declared, "that it was the intention of the testator that as well the real as personal estate devised and bequeathed by him to the complainants should be by them converted into money and invested equally for the use of "his children and grandchildren upon the conditions, &c., in his will; and that, therefore, the said real estate, devised in trust as aforesaid from the time of the decease of said testator, for the purpose of succession, must, in equity, be considered as converted into and treated as personal estate; * * * that upon the decease of testator's said daughter, Isabella G. Page, leaving issue then living, her estate of and in said real and personal estate then in the hands of said complainants was not defeated, but became absolute and indefeasible, and passed to and vested in her personal representatives, and should be held by said complainants as personal estate, to be paid by them to her surviving husband, Samuel Davis Page, as the administrator, in the state of New Jersey, of the said Isabella G. Page, deceased, to be paid and distributed by him as such administrator according to law."

On the 31st of December 1870 the chancellor, in like manner, further ordered, adjudged and decreed, and " doth hereby further order, adjudge and decree that the said complainants do forthwith pay to the said Samuel Davis Page, administrator as aforesaid, all the aforesaid separate fund which was in their hands for the use of Isabella G. Page at the time of her decease, not included in the said John Howard Wurts's portion thereof, and also all the arrears of income thereon, by assigning to him as administrator, as aforesaid, all the securities in which the said separate fund and arrears of income are invested, and by paying to him, as such administrator, any portion or portions thereof that may be uninvested. * * *

"And the said chancellor hath, in like manner, ordered, &c., that all the estate, real and personal, which was of the said testator at the time of his decease, and now in the hands of said complainants, not appertaining to the aforesaid separate fund, and not herein above decreed to be assigned or paid as aforesaid, on account of said John Howard Wurts's share of said estate, nor required to discharge the costs and other expenses of this cause, now is, and hereafter shall be held by said complainants, &c., in trust, as follows : that is to say : * * * as to one other one-seventh part thereof, in trust for Samuel David Page as administrator of Isabella G. Page, deceased, absolutely." * * *

Upon this decree the trustees paid to Mr. Page under his New Jersey letters of administration the sum of $66,658.44, including the $9893.58 above mentioned as belonging to Mrs. Page.

Mr. Page settled his administration account in New Jersey, charging himself with the sum so received from the trustees, and

[Page's Estate.]

being allowed a credit for the whole sum, having appropriated it to himself as administrator in Pennsylvania.

He filed his administration account with the register in Philadelphia, on the 9th of February 1871, charging himself with the amount decreed to him in New Jersey and claiming no credit.

On 17th of March 1871 the Orphans' Court referred the account to J. D. Rodney, Esq., as auditor to audit and adjust and report distribution.   The auditor reported in substance as above stated.

He stated an account allowing commissions to the administrator, and allowing to the children of Mrs. Page three-fourths of the sum of $9893.58; and showing a balance of $54,421.28 for distribution: he found that of this balance $1000 were the proceeds of real estate in Pennsylvania sold by the trustees.

Mr. Page claimed the whole sum of $54,421.28 in his own right.

The minors claimed three-fourths of the sum of $53,421.28 and the whole of the $1000, subject to Mr. Page's life-estate.

The auditor decided that the Court of Chancery, a court of competent jurisdiction, having, on a question of distribution, decreed that Mrs. Page's share belonged to her husband in virtue of his marital rights, the Orphans' Court had no jurisdiction to decree distribution except as to the $9893.58.

He also decided "that there was a conversion of the real estate in Pennsylvania, by the will of Mr. Wurts, and the $1000, the proceeds of such real estate, remains properly within the item cash, and should be comprehended in the distribution of such cash."

The auditor further decided that the estate to which Mrs. Page was entitled under her father's will did not on her death pass under the Married Woman's Act of April 11th 1848, but under the Intestate Act of April 8th 1833 (Pamph. L. 316, 1 Br. Purd. 806). He therefore awarded to Mrs. Page's minor children $7049.18, three-fourths of the $9893.58, less commissions; and to Mr. Page $59,607.27, made up of one-fourth of the last-mentioned sum and the whole of the sum of $54,421.28, after deducting expenses.

The guardian of the minors filed exceptions to the report; they were overruled and the report confirmed.

The guardian appealed to the Supreme Court and assigned the decree of confirmation for error.

*W. W. Wister, Jr.*, for appellant.—To the forum of the decedent's domicil belongs the distribution of the personal property: Story on Conflict of Laws, sect. 481; Ersk. Instit., B. 3, tit. 9; Vattel, B. 2, sect. 85; Wilkins *v.* Ellet, 9 Wallace 740; Holmes *v.* Remsen, 4 Johns. Ch. 460; In the Goods of Earl, Law Rep. 1 P. & D. 449. The opinion of the chancellor was, that the estate of Mrs. Page in the property before him was absolute, and that the same is paya-

ble to S. Davis Page as her administrator, to be administered according to the law of her domicil at the time of her death: Wurts *v.* Page, 4 C. E. Green 365; Stokely's Estate, 7 Harris 476.

In order to effect an equitable conversion, it is necessary that the testator should explicitly direct that a sale should be absolutely and positively made of his real estate: Henry *v.* McCloskey, 9 Watts 145; Bleight *v.* The Manufacturers' Bank, 10 Barr 131. The addition of a discretion on the part of the donees of the power destroys the argument of an absolute intention on the part of the testator to convert in all events: Walter *v.* Maunde, 19 Vesey 424; Wright *v.* The Trustees of the M. E. Church, 1 Hoffman (N. Y.) 219.

It is upon this absolute intention of the testator to treat his land as money or his money as land, in all events, that the whole doctrine of equitable conversion is based: Fletcher *v.* Ashburner, 1 Bro. C. C. 497; Doughty *v.* Bull, 2 P. Williams 320; Craig *v.* Leslie, 3 Wheat. 564.

The limitations or expressions used by the testator must not only be such as are perfectly compatible with his estate as converted; they must positively and wholly rebut any and every other presumption. The provisions of the will must not only be such as may be carried out if the estate is converted; they must be incapable of being otherwise carried out at all: Cornick *v.* Pearce, 7 Hare 480; Henry *v.* McCloskey, 9 Watts 145; Burr *v.* Sim, 1 Whart. 252; Bleight *v.* Manufacturers' Bank, 10 Barr 131; Nagle's Appeal, 1 Harris 261; Chew *v.* Nicklin, 9 Wright 84; Leiper *v.* Thomson, 10 P. F. Smith 177.

The first clause of the will devising the whole estate to trustees, for the use and benefit of his children, is sufficient to pass the fee, independently of the 9th section of the Act of 1833. The subsequent clause that the *income* only shall be paid to his daughters does not affect this as a devise of the income, or of the proceeds; is a devise of the estate itself: Carlyle *v.* Cannon, 3 Rawle 489; Allen *v.* Henderson, 13 Wright 333. The clause directing it to be held for her sole and separate use, free from the control of her husband, would not prevent its vesting as a legal estate, Mrs. Page, at the time of her father's death, not being married, nor contemplating marriage: McBride *v.* Smyth, 4 P. F. Smith 245; Wells *v.* McCall, 14 Id. 207; Springer *v.* Arundel, Id. 219. "Dying without issue" means an indefinite failure of issue: Kay *v.* Scates, 1 Wright 31; and creates an estate tail in the realty, and an absolute estate in the personalty: Amelia Smith's Appeal, 11 Harris 9; Potts's Appeal, 6 Casey 168. The Act of 1848 repeals, so far as regards the property of married women, the Intestate Law of 1833, and provides how their estates shall thereafter be distributed in cases of intestacy.

[Page's Estate.]

This is the sole scope and intent of the ninth section of the act, and any argument which denies its applicability to equitable estates in fee of married women, whether settled to their sole and separate use or not, must equally deny the application of all prior intestate acts to such estates.

The Act of 1848 is not less comprehensive in its terms than the prior intestate Acts of 1833, 1794, or 1705, as far as regards the nature of the property embraced. There is no reference in either the Act of 1833 or 1848 to the distribution of equitable estates, and for the best of reasons, for it was only on the principle that "*æquitas sequitur legem*," that estates in equity originally descended as at common law, and subsequently in accordance with the Distribution Acts : 2 Blacks. 330 ; Schuyler *v.* Hoyle, 5 Johns. Ch. C. 207 ; Faries' Appeal, 11 Harris 29 ; Van Rensselaer *v.* Dunkin, 12 Id. 252 ; Dubs *v.* Dubs, 7 Casey 149.

*G. T. Bispham*, for appellee.—The possession once in the husband, as administrator, his marital rights, which had attached immediately upon his wife's death, would come into active beneficial operation : Williams on Executors 778 ; 2 Black. Com. 435. Not only are the extent and character of the estates created by the will to be determined by the law of the domicil of the testator, but the ascertainment of the persons who are to take is also to be governed by the same law : Harrison *v.* Nixon, 9 Pet. 483 ; Story's Conflict of Laws, sec. 479 *c.* : Anstruther *v.* Chalmer, 2 Sim. R. 1 ; and Boyes *v.* Bedale, 1 Hem. & Mil. 805 ; Sill's Appeal, 1 Grant's Cases 235, *nom. ;* Van Rensselaer *v.* Dunkin, 12 Harris 252.

As to the equitable conversion, he cited Grieveson *v.* Kirsopp, 2 Keen 657 ; Mower *v.* Orr, 7 Hare 475 ; Wurt *v.* Page, 4 C. E. Green 365 ; Bogert *v.* Hertell, 4 Hill 494, as showing that imperative words are not required nor absolute irreconcilability, but only sufficient proof of intention : Evans's Appeal, 13 P. F. Smith 183 ; Parkinson's Appeal, 8 Casey 455. If the testator intended a money gift, there will be a conversion : Smith *v.* Claxton, 4 Maddocks 484. The use of optional words will not prevent a conversion when the intention from the dispositions of the will is to convert: Smith *v.* Tasewell, 1 Randolph 313 ; Stagg *v.* Johnson, 1 Comstock 206 ; Rhinehart *v.* Harrison, Baldwin's R. 184 ; Cowley *v.* Harstonage, 1 Dow 361 ; Cookson *v.* Reay, 5 Beav. 22 ; Johnson *v.* Arnold, 1 Vesey 169. Notes to Fletcher *v.* Ashburner, 1 Lead. Cases Eq. 788-801 ; The Insurance Co. *v.* Foster, 11 Casey 134 ; Wright *v.* Brown, 8 Id. 224, establish that there are in Pennsylvania two distinct classes of estates in which married women can have an interest : first, the legal separate estate created by the Act of 1848, and by virtue of that statute taking the place of the legal estate at common law ; and secondly, the equitable separate estate, which was entirely outside of the provisions of the

[Page's Estate.]

Act of 1848, for the simple and obvious reason that, not being within the mischief of the old law, it was not touched by the remedial statute: Guthrie's Appeal, 1 Wright 9.

The opinion of the court was delivered, January 19th 1874, by AGNEW, C. J.—Mrs. Page, the intestate, being domiciled in Philadelphia, the register of her domicil had jurisdiction over her estate. This would include the estate which came to her under the will of her father, William Wurts, of New Jersey, unless taken out of the course of administration by the limitations of his will. As the donor of the estate, he had power to limit it to others on her death, and thus to cause it to be disposed of as his own estate, and in that event it might be drawn into administration in New Jersey. But the property bequeathed to her was not to go over under the terms of the will, and the court in New Jersey decreed payment to the ancillary administrator of Mrs. Page, who has brought the fund into this state, to be administered under the principal letters issued here. The jurisdiction of the Orphans' Court cannot be doubted.

This brings us to the question of devolution. It is claimed by Mrs. Page's husband, who is also her administrator, under his alleged marital rights, while the appellants claim three-fourths of it for her children by right of succession under the laws of Pennsylvania. It is supposed on part of Mr. Page, that the estate being bequeathed to Mrs. Page for *her sole and separate use*, it is therefore taken out of the ordinary laws of succession and returns to her husband as at common law by survivorship. This is a mistake. The Act of 1848, securing to married women their property, destroyed the marital rights of her husband in her estate at common law, and therefore, when the suspension of Mrs. Page's *power* over the estate, caused by the sole and separate use, ceased at her death, the husband had no marital rights of property to which he could return. The doctrine of Ins. Co. *v.* Foster, 11 Casey 134; and Wright *v.* Brown, 8 Wright 224, is misapplied. It is not doubted that the Act of 1848 does not unfetter the estate of a feme covert, settled to her sole and separate use, so as to confer upon her a power not given to her by the donor, to convey away her estate. On this point Lancaster *v.* Dolan, 1 Rawle 231, is still the law. Hence, where no power is given to sell or convey her estate, she is still restrained by the will of the donor of the estate. But this suspension of her *power* does not destroy her entire and undivided *ownership* of all her personalty under the terms of the Act of 1848 : that act extends to all kinds of property, and left nothing to the husband. He is no longer the owner of her chattels or her choses, and on her death they go into administration, and not to him by survivorship. Hence the cases cited as to the suspension created by the sole and separate use, and the return of the husband to his marital rights, when the suspension has

ceased, are not precedents in this state, where the husband has no marital right at common law to which he can return. The error in the argument is in supposing that the creation of an estate for the sole and separate use of the wife is an act of favor to the husband. But this is an illogical inference. The intent of the donor to take the estate out of the control of the husband, is adverse to the husband. It would be a most unfriendly interpretation of the Act of 1848, divesting the husband of all right of property by marriage, to say it did not mean to divest his right, because the donor himself had refused to the husband any power to control her estate. The husband being separated from it, both at law and by the will of the testator, Mrs. Page's estate can go only by succession to her husband and children under the laws governing her intestacy.

The question of the conversion of the real estate in Pennsylvania, devised to Mr. Page, must depend on the will of Wm. Wurts, there being no actual conversion by the trustees under his will in her lifetime. It therefore descended as real estate, unless conversion was wrought by the will itself.

It has been decided in New Jersey that a conversion arises under the terms of Wm. Wurts's will. We dissent from this with much unwillingness and some hesitation. We agree that a conversion may arise, without express terms, when it is clear that a testator meant to create a fund raised out of both real and personal estate, and to bequeath this fund in *money* alone. But it seems to us the error in the argument is in assuming the only fact from which conversion can fairly be inferred, to wit, an absolute intent to create a consolidated fund out of both real and personal estate, to be distributed in money. As we read the will, the first item is simply a devise and bequest of all the testator's real and personal estate in trust for his children. The direction following the devise to invest the proceeds of his estate "*after settlement, and his just debts are paid*," for the benefit of his children, applies only to the personalty, the fund for the payment of debts, and the proper subject of a settlement. If the word "estate," used in creating that fund, means his entire estate, real as well as personal, we might conclude the testator intended a conversion. It is not only used in connection with terms restraining its meaning to personalty, but it is also interpreted by the language and intention of the fourth item of the will. That item confers only a discretionary authority to sell the real estate when the trustees and executors deem it advisable, a power which might never be exercised. Then the testator directs the proceeds of such sales to be received and invested and held by them upon the same trusts, and to and for the same purposes as therein before expressed and set forth. Now if the conversion took place under the first item of the will the proceeds of the real estate *ipso facto* became a part of the fund

25 P. F. SMITH—7

[Page's Estate.]

to be distributed, and it was unnecessary to provide for it a second time in the fourth item. The whole frame of the will, and especially the fourth item, would seem to us to indicate no more than a discretionary power of sale, which would work conversion only when a sale should be made. Hence, on the death of the testator, the real estate passed to his children as real estate, by equitable title, and not as personalty. Mrs. Page having died before actual conversion under the discretionary power contained in the fourth item, her equitable estate descended to her children as realty. When conversion took place the title to the realty was in them.

The decree of the Court of Chancery at the suit of the trustees in New Jersey did not decide any question of distribution, as to so much of the fund there as belonged to Mrs. Page. Its effect was to authorize the payment of the money to Mr. Page, the ancillary administrator, leaving the question of distribution to be settled in the forum of Mrs. Page's domicil.

The decree of the Orphans' Court is therefore reversed, with costs to be paid by the appellee, and it is ordered that a distribution of the balance in the hands of the administrator of Mrs. Isabella G. Page be made to her surviving husband and children in equal shares, according to law, and the record is ordered to be remitted to the Orphans' Court to make distribution accordingly.